# IN THE COURT OF APPEALS OF IOWA

No. 19-1913
Filed January 23, 2020

**IN THE INTEREST OF A.P.,**
**Minor Child,**

**D.C., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A father appeals the termination of his parental rights to his two-year-old daughter. **AFFIRMED.**

Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Erin Mayfield of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

A father, David, appeals the termination of his parental relationship with his two-year-old daughter, A.P. He argues the better outcome would have been to postpone a permanency decision so he could build a relationship with A.P. Because nothing in the record shows David—who was incarcerated at the time of the termination hearing—will be ready to care for his daughter in six months, we find termination was the proper course.[1]

## I.       Facts and Prior Proceedings

David "wasn't even aware [Cassie] was pregnant" until he was already incarcerated. The criminal court sentenced David to prison in September 2016 on four felony drug convictions. After A.P. was born in March 2017, Cassie brought the baby to see David at the Clarinda Correctional Facility a few times but stopped visits after about seven months.

In October 2018, Cassie left A.P. with a social worker at Iowa Methodist Hospital. Cassie was struggling financially and intended to invoke Iowa's Newborn Safe Haven Act, which allows parents to voluntarily release custody of an infant. *See* Iowa Code § 233.2 (2018). But that act only applies to children who are thirty days or younger. *Id.* § 233.1(c). A.P. was eighteen months old. After Cassie abandoned A.P., the juvenile court issued a removal order and placed the child in

---

[1] Our review of the juvenile court proceedings is de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). That court's fact findings do not bind us, but we give them weight, particularly on credibility issues. *Id.* The State must present clear and convincing evidence to support termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Evidence satisfies that standard if no serious or significant doubts exist that the conclusions of law drawn from the proof are correct. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Our top concern is A.P.'s best interest. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

foster care. The court adjudicated her as a child in need of assistance (CINA) in December 2018.[2]

At that adjudication hearing, David asked for a home study under the Interstate Compact on the Placement of Children (ICPC) for his mother and sister in Alabama. The Iowa Department of Human Services (DHS) did not pursue that ICPC inquiry until after the permanency hearing in October 2019. It was not completed by the time of the termination hearing in November.

David remained incarcerated for the life of the CINA case. At the termination hearing, he testified from the Anamosa State Penitentiary. He could not quote the court an exact release date, but estimated he could be free in the early months of 2020. He testified his preference from the beginning was for A.P. to remain with Cassie, but also wanted his mother and sister considered for placement. David did not address his substance-abuse history at the termination hearing, but the State offered exhibits showing the extent of his addictions. A substance-abuse evaluation conducted in September 2016 chronicled David's use of cocaine and marijuana dating back to his early teens and recommended high-intensity residential treatment.

A year after A.P.'s removal, in October 2019, the State petitioned to terminate the parental rights of both Cassie and David. The juvenile court granted the petition the next month, relying on paragraphs (e) and (h) of Iowa Code

---

[2] A.P.'s case went to Polk County's Zero-to-Three Safe Babies Court, which focuses on the science of early childhood development to help improve the well-being of young children in dependency proceedings.

section 232.116(1) (2019) to terminate David's rights.[3] David contests the termination order on appeal.

## II. Legal Analysis

## A. Statutory Ground for Termination

In his petition on appeal, David challenges both bases for termination of his parental rights. When the juvenile court relies on more than one statutory alternative, we may affirm on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, we focus on paragraph (h). Under that paragraph, the State must prove by clear and convincing evidence: (1) the child is three years of age or younger; (2) she has been adjudicated as CINA under section 232.96; (3) she has been removed from her parents' physical custody for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; and (4) there is clear and convincing evidence she cannot be returned to parental custody as provided in section 232.102 at the present time. Iowa Code § 232.116(1)(h); *see A.M.*, 843 N.W.2d at 111 (interpreting statutory language "at the present time" as the time of the termination hearing).

On appeal, David asserts the State did not prove the final element. But at the termination hearing, David acknowledged he was not in a position to care for his daughter due to his incarceration.[4] And his argument on appeal is not that he

---

[3] Cassie consented to the termination and does not appeal.

[4] The juvenile court explained that David requested visits with A.P. while in prison but the court denied those requests because he was incarcerated three hours away. The court acknowledged had he been closer "we might have been able to do better." David does not raise a reasonable-efforts challenge on appeal.

could have assumed custody of A.P. in November 2019, but that the juvenile court "could have granted a six month extension" until his release from prison.

To grant an extension under Iowa Code section 232.104(2)(b), the court must determine the need for removal will no longer exist after that reprieve. *In re A.A.G.*, 708 N.W.2d 85, 89 (Iowa Ct. App. 2005). We cannot make such a determination here. David was unsure when he would be released from prison. And after his release, his parenting skills would be untested. He has a long history of unaddressed substance abuse. This record offers no assurance David could provide a stable home for A.P. after six months. *See A.B.*, 815 N.W.2d at 778 (looking to a parent's past performance for clues about the prospect for future care). Under these circumstances, termination of David's parental rights was proper under section 232.116(1)(h).

## B. Best Interests

David next argues termination of his rights did not serve A.P.'s best interests. *See* Iowa Code § 232.116(2). In making the best-interests determination, we give primary consideration to the child's safety, the best placement for furthering her long-term nurturing and growth, as well as her physical, mental, and emotional condition and needs. *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). That consideration also may include a child's integration into her foster family and their willingness to adopt the child. *See* Iowa Code § 232.116(2)(b). Safety and the need for a permanent home mark the "defining elements" in a child's best interests. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

David complains that A.P. is placed with an Iowa foster family despite his repeated requests for an ICPC home study of his relatives in Alabama. While the DHS was slow in pursuing the home study requested by David, by the same token, his mother and sister did not make any overtures to start a relationship with A.P. in Iowa. Meanwhile, the foster family provided A.P. with a loving, stable home. The DHS extolled the efforts of the foster parents in working closely with Cassie in a "kind of coparenting relationship." The foster father told the court that even after termination they were willing to keep relationships open with A.P.'s biological mother and father.

After our de novo review, we agree with the juvenile court's assessment that termination of David's parental rights is in A.P.'s best interests under the criteria in section 232.116(2).

**AFFIRMED.**